## MIAMI POWDER CO. *v.* HOTCHKISS.

*(Circuit Court, N. D. Illinois. January 17, 1887.)*

**ATTACHMENT—FRAUDULENT CONVEYANCE.**

> Defendant, finding himself in failing circumstances, sold his stock, nominally worth $8,000, to his son for $6,000, taking therefor three notes of $2,000 each, due in one, two, and three years, respectively, without interest, which notes he transferred to the bank, to apply the collections thereof on his indebtedness to the bank of $6,040. No inventory was made, and the son had no means. But the son was 33 years of age, had been clerk in the business for many years, and was named as devisee of property worth $5,000 in the will of his grandmother, who since making the will had been demented, and whose health was so poor that she could not live long. Immediately after the sale defendant's sign was taken down, and that of his son was in a few days put up. The property sold would to any one else than the son have been worth no more than $4,000 or $5,000, and was not worth more to the son than what he paid for it. *Held* that, in the absence of a statute forbidding preferences, that was no attempt to defraud, hinder, or delay defendant's creditors that would sustain an attachment.

*J. N. Jewett* and *S. D. Puterbaugh*, for plaintiff.
*Geo. B. Foster*, for defendant.
*Stevens, Lee & Horton*, for interpleader.

BLODGETT, J. The plaintiffs brought three suits by attachment in the Peoria county circuit court, and under the writs issued in these suits a stock of hardware in the store formerly occupied by defendant in the city of Peoria was levied on. These suits, by order of court, were consolidated, and subsequently the consolidated case was removed to this court. The plaintiff also brought a suit by attachment in this court; and the same stock of goods was attached by the marshal of this district; and by order of this court the suit removed from the Peoria county circuit court

and the suits originally commenced in this court were consolidated. Zenas N. Hotchkiss, the defendant in the original suit, pleaded an abatement of the attachment writs, denying the statements in the attachment affidavits that he had fraudulently conveyed or assigned his effects, or a part thereof, so as to hinder and delay his creditors. Rudolphus R. Hotchkiss has also interpleaded in the cases, claiming that he is the sole owner of the property attached under the writs, and that the defendant, Zenas N. Hotchkiss, had, at the time of the levy of the said writs of attachment upon said goods and property, no interest in said goods, nor any part thereof; upon which said interpleader plaintiff has joined issue. These issues made by the plea in abatement and the interpleader were tried without the intervention of a jury.

The facts, as they appear in the proof, are that, for many years, (since 1849, as I now remember the proof,) Zenas N. Hotchkiss had been engaged in business in the city of Peoria as a retail dealer in hardware; that on August 13, 1884, he sold to his son Rudolphus R. Hotchkiss the entire stock of goods in the store, together with the furniture used in the store, and the outstanding notes and accounts pertaining to his business, for the sum of $6,000, for which amount he took three notes of the purchaser for $2,000 each, payable in one, two, and three years from the date of said purchase without interest; and on the same day Zenas N. Hotchkiss transferred these notes to the Peoria National Bank, to be held and collected by the bank, and the proceeds applied upon certain indebtedness of the said Zenas N. Hotchkiss, a schedule or memorandum of which was attached to the notes, amounting in the aggregate to $6,040; and a notice of the transfer of these notes was given to the creditors named in the schedule, and they assented thereto. At the time this sale was made, Zenas N. Hotchkiss was insolvent, and unable to pay his debts in full, and plaintiff was pressing for payment of the two notes then due, amounting to about $1,300. This sale was made without an inventory. R. R. Hotchkiss was at the time of this transaction about 33 years old, and had for several years been in his father's employ as a clerk in the store, at a salary. Immediately after the sale the old sign of Z. N. Hotchkiss was taken down, and within a day or two afterwards a new sign, bearing the name of R. R. Hotchkiss, in plain, conspicuous letters, was put up in place of the old sign. At the time of this purchase, R. R. Hotchkiss was not in possession of any considerable property, but he was one of the devisees of his grandmother by her will, she being at the time quite an old person, and demented or imbecile; but her will had been made several years before, when she was of sound mind, and the condition of her health was such as to make it probable that, within a very short time, he would succeed to his share of the estate. The grandmother has since died, and he has realized $5,000 or over for his interest in the estate. The fact of his expectations from the estate of his grandmother was well known in Peoria, where she and he resided. It also appears that after the sale R. R. Hotchkiss told one of the officers of the plaintiff that he had done as his father wished; that he expected to follow the instructions of his father,

and pay the $6,000 purchase money on his father's debts to the bank. Nearly $3,000 of the debts for which the notes were turned over to the bank was held by the bank, and the balance was nearly all made up of small amounts, on which personal friends of Zenas N. Hotchkiss were liable as indorsers, guarantors, or joint makers. The notes and accounts included in the sale of the personal property, aside from the stock of goods, were of very little value; and although the goods inventoried about $8,000, yet many of them were much shop-worn, and their selling value would not exceed $6,000, if it equaled that amount.

The position of plaintiff is that this sale was made to hinder and delay creditors, and was therefore fraudulent and void, as against the creditors of Z. N. Hotchkiss; and the reasons urged in support of this position are that the sale was made on unusual terms of credit, and to a son of the debtor, who was a man of no means or commercial credit, and in such haste that no inventory was taken, and that there was no visible change of possession.

Since the repeal of the bankrupt law an insolvent debtor has an undoubted right in this state to prefer part of his creditors to the exclusion of others. *Smith* v. *Craft*, 12 Fed. Rep. 856. Hotchkiss found himself insolvent, and had home debts, to the extent of about $6,000, which he wished to pay in full, or as far as his property would go. His means of doing this consisted of this old stock of goods, which might have been invoiced at about $8,000, but which, as the proof shows, would not have brought more than four or five thousand dollars at cash sale. The son was willing to take them, expecting to continue the business, and avail himself of his acquaintance with it, and what of the good-will of the trade he could command; and expected to realize the amount of the purchase money by the time the notes fell due. This was undoubtedly what he meant when he said to Mr. Decker, the plaintiff's agent, that he expected to do what his father wished, and pay the notes. It is doubtful if any other person would have assumed so large an indebtedness for this stock of goods. While the time was unusually long, the price, under the circumstances, must be deemed high. The purchaser was not wholly without means which would entitle him to credit. The proof shows that he had been offered a business partnership in which his interest in his grandmother's estate was to be considered as equivalent to $5,000 capital. These expectations, while they gave him no money in hand, did give him credit; so that in assuming to buy out his father's goods, and continue the business, he was not wholly without means to justify the undertaking. The grandmother's will was made, and, by reason of hopeless imbecility, she was incapable of changing it; so it was only a question of a short time when he would come into possession of his share of her estate.

Ordinarily the failure to take an inventory of a stock of goods, and the sale in a lump, is considered as a badge of fraud; but in this case the purchaser, for about 10 years, had been employed in the store, and had taken an active part in the business, and may be presumed to have known with quite approximate certainty the value of the goods. The change of sign over the front of the store was enough to notify all per-

sons dealing with the store of the change of ownership. Besides this, the plaintiffs at the time they made their attachment knew all about the sale to the son, and had seen and talked with both the father and son, and also with the attorney who had advised the transaction, and knew the terms of sale, and that the notes had been delivered to the bank to secure the scheduled creditors. Under these circumstances, I cannot say that the sale was fraudulent. Not being able to pay all his creditors, Z. N. Hotchkiss had a right to choose whom he would pay; and, at the time these attachments were issued and levied, not only had R. R. Hotchkiss given his negotiable paper for the goods, but that paper had been put in circulation in such manner as to vest rights in the creditors named in the schedule. The court will presume from the testimony in the case, and from the circumstances, that, if these creditors named in the transaction with the bank had not been secured by the pledge of these notes, they would have taken steps to obtain judgments; and their action in that respect would have been facilitated by the debtor to such an extent that they might have obtained judgments before the plaintiff's attachments. At all events, these creditors were evidently induced to lie still, and rely on the provision which the debtor had made for their payment; and, under the circumstances, it seems to me that more injury would be done to these creditors by finding this transaction fraudulent than by sustaining it.

The issue is therefore found for the defendant on the plea of abatement in the attachment case, and a judgment will be rendered that the attachment be abated; and the issue is found for R. R. Hotchkiss on his interpleader.